79C01-2104-CT-000051

Tippecanoe Circuit Court

Filed: 4/1/2021 1:11 PM
Clerk
Tippecanoe County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE TIPPECANOE COUNTY CIRCUIT AND |
| | ) SS: | SUPERIOR COURT |
| COUNTY OF TIPPECANOE | ) ) | CAUSE NO. |

| | |
|---|---|
| HOLLY CORWIN HICKS ) | |
| Plaintiff ) | |
| ) | |
| v ) | |
| ) | |
| ACell Inc. ) | |
| Defendant ) | |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW, the Plaintiff Holly Corwin Hicks *(Plaintiff)* by counsel, I. Marshall Pinkus and for her complaint for damages against the Defendant ACell Inc. *(Defendant)* she alleges as follows:

1. Plaintiff has been a bona fide resident of Tippecanoe county, Indiana for more than six (6) months prior to and at the time of the filing of this cause of action.

2. Defendant is an Indiana corporation doing business at 3589 Sagamore Parkway N. Lafayette-West Lafayette 47904. Tippecanoe County, Indiana.

3. Plaintiff began working for the Defendant on June 26, 2017 as a Biotechnician earning $16.47 per hour, forty (40) hours per week.

4. When hired, Plaintiff had to sign a non-compete agreement that provided that upon the termination of her employment she could not, for eighteen (18) months accept a job with West Lafayette based Cook Biotech Inc. or Cook Research Inc.

5. Plaintiff had to agree to mandatory overtime up to eight (8) hours per week.

1.

6. Plaintiff's job required long hours on her feet. She was required to remain in one standing position doing dishes called 'Trim and Rinse'. Plaintiff was required to do other manual labors such as lifting heavy, pushing, and pulling heavy objects. Much of her work involved having to kneel and squat.

7. Plaintiff was born with two (2) dislocated hips. When hired, her left hip was causing her mild pain. In early 2018, Plaintiff's pain became more intense. She was treated by Jeffrey C. Wang, MD at IU Health Arnett Medical Office.

8. Plaintiff's left hip pain escalated to the point where she could barely do her job. She was referred to an orthopedic specialist. On September 6, 2018. Plaintiff learned that she had left hip dysplasia that required surgery. Defendant was made aware that Plaintiff was temporarily disabled and would be released to go back to work on or about February 5, 2019. On February 19th, Defendant was advised that Plaintiff's release to work would be May 13, 2019 and that she would require a few reasonable temporary accommodations.

9. On or about April 1, 2019 Plaintiff received a phone call from Defendant's Plant HR Manager informing Plaintiff that she was fired and that a letter had been mailed confirming the termination of her employment.

**COUNT I PROMISSORY ESTOPPEL**

10. Based upon communications, and Defendant's conduct, Plaintiff reasonably believed that the Defendant had guaranteed that her job was being held for her until she was released by her doctor to return to work. Defendant had not warned Plaintiff that she could lose her job if she was unable to return to work. Plaintiff had been a reliable, productive employee.

11. Plaintiff, while unable to work, did not try to find alternative employment.

12.     Plaintiff reasonably believed and relied upon the Defendants' communications and conduct, an implied promise, that she did not need to find another job.

13.     Defendant did not have just cause to fire Plaintiff.

14.     Defendants' firing of the Plaintiff was unconscionable and against public policy.

15.     Defendants had begun a pattern of terminating the employment of temporarily disabled employees of which Plaintiff was not aware.

16      Plaintiff is still not employed.

17.     Plaintiff, relied to her detriment upon the Defendants implied promise, sustaining economic and emotional distress.

## COUNT II RETALITORY TERMINATION

18.     Plaintiff incorporates paragraphs one (1) through seventeen (17) herein as if fully set out. Defendant's termination of Plaintiff's employment was retaliatory.

19.     Plaintiff had not done anything wrong while she was carrying out her job responsibilities to justify being fired. and while unable to work she followed all rules, provided Defendant medical records, doctor opinions, doctor orders, needed accommodations, and release to work dates.

20.     During the time she was temporarily unable to work, Plaintiff gave the Defendant written authorization to acquire her medical records, communicate directly with her medical providers, and kept Defendant informed of her condition and return to work date.

21.     Defendant intentionally engaged in deceit as part of their retaliatory, unconscionable termination of Plaintiff's employment

3

## COUNT III RELIEF SOUGHT

22.     Plaintiff incorporates by reference paragraphs one (1) through twenty-one (21) as if fully set out herein.

23.     Plaintiff seeks an award of damages equal to the income that she would have been receiving from the Defendant had she not been unjustly fired in a total amount to be determined by the Court.

24.     Plaintiff seeks an award of damages from the Defendant for the economic and emotional harm caused by the Defendant in an amount to be determined by the Court.

25.     **Plaintiff moves the Court for a Jury Trial.**

WHEREFORE, Plaintiff seeks an award of damages that will fairly and justly compensate her for her financial losses, and emotional distress, for trial by jury, and for all other relief that would be just in the premises.

Respectfully Submitted:

**/s/ I. Marshall Pinkus**
*PINKUS & PINKUS, ATTYS LLC*
7002 Graham Road Suite #100
Indianapolis, IN 46220
Phone: (317) 576-3743
Fax: (317) 576-3745
Email: impinkus@pinkusattorneys.com

4